GREGORY GIANNATTASIO
29 GOLD STREET
VALLEY STREAM, NY 11580

HONORABLE VINCENT L. BRICCETTI
FEDERAL U.S. DISTICT COURT
SOUTHERN DIST. OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/17/2014

APRIL 6th, 2014

APR 17 2014

RE: GIANNATTASIO V. JOHN / JANE DOE, ET AL.
13 CV 4378 (V.L.B)

#1) Requested (96) hour extention
#2) ███████ AMENDED COMPLAINT (enclosed)
#3) Plaintiff Respectfully Request
   (Telephone Conference Call or preliminary
   COURT DATE To Address Confusing issues
   of Procedures)

Dear Hon. Vincent Briccetti :

   I the above named Plaintiff in + of the above
caption action respectfully seek the above caption
request.

   Plaintiff is obviously overwhelmed with all of his
Parole request, Medical issues & complexity that this
action requries. Plaintiff must eventually seek Counsel

in order to address such matters that this
action will continue to present.

Plaintiff will respectfully request such coun-
sel from the Court first before seeking such on
his own accord.

Thank you!

Respectfully

cc: file/etc.

# NAMING PARTIES / DEFENDANT(s)

A) POLICE COMMISSIONER, RAYMOND KELLY (Then Acting)
1) Police Lt. JOHN NATOLI,
2) Police Sgt. ADAM SEIDENBERG (#105 Precinct),
3) Police Sgt. KEVIN YEH (#109 Precinct),
4) Officer PETER MAGUIRE,
5) Officer SCOTT MARTIN

6) QUEENS GEN., Hosp. CENTER — CHIEF ADMINISTRATOR — KIM L. WHITMIRE / MEDIA OLIVER, (JOHN/JANE DOE) ATTENDING PHYSICIAN, (JOHN/JANE DOE) NURSE ADMINISTRATOR (JOHN/JANE DOE) HEAD FL. NURSE (JOHN/JANE DOE) ASST. NURSE(S)(JOHN/JANE DOE #2)

7) RIKERS ISLAND — WARDON, THOMAS HALL (JOHN/JANE DOE) NORTH INFIRMARY, COMMAND CENTER (N.I.C.) WARDON, CARLTON NEWTON (JOHN/JANE DOE) NURSE/DOCTOR ADMINISTRATOR (JOHN/JANE DOE (POLICY MAKERS) CLINIC DOCTOR/NURSE (JOHN/JANE DOEs)

{ * Third action (against Queen County Supreme Court and Personnel) has been omitted in its entirety. (Also all John/Jane Doe's Police omitted) }

First Cause of Action — Police Comm./Commanders, etc.
# 1 — 8
Second Cause of Action — Queens Hospital Center, etc.
# 9 — 12
Forth Cause of Action — Rikers Island, etc.
# 18 — 24
Summary of Facts (# 25 — 39) / Injuries Medical Treatment (A — G) Injury Results (# 1 — 4) Relief (Court A — G)

# (FIRST CAUSE OF ACTION — POLICE)

1.) On or around the 12th day of June 2010, I the named Plaintiff of this instant complaint was the victim of excessive and an unreasonable amount of force. Such force was initiated by the named defendants of the N.Y.C.P.D. while acting in Official Capacity for (then) Police Commissioner, Raymond Kelly.

APR 17 2014

2.) Plaintiff maintains that he was victim of a car crash (accident) perpetrated by named Defendants for an alleged seat-belt violation. Plaintiff was pursued by an all black Toyota Camery, which did not display any tags/badges and had darkly tinted windows.

3) Plaintiff was forced into an intersection which contained fairly dense traffic (running in both directions). Plaintiff vehicle was going south when his car was struck by at least two vehicles which were heading West bound on Merrick Road in Valley Stream & Carole Ave. (Which Plaintiff was on) before he was forced to merg onto Merrick Rd. about a half mile from the Queens boarder.

# FIRST CAUSE OF ACTION CONT.

4.) Plaintiff's car wreak was serious in nature and resulted in significant life threatening injuries. (Plaintiff's car a compact was hit on the drivers side by a heavy duty S.U.V. traveling at a high rate of speed). Said accident pinned Plaintiff in his vehicle + rendered him semi-unconscious drifting in + out of consciousness.

5.) Plaintiff's car was approached by at least five (5) to six (6) Plainclothes Officers, of said unit, with guns drawn + pointed at Plaintiff. Plaintiff was allegedly order to exit the vehicle with his hands on his head. When Plaintiff (who was badly injured) tried to explain that, he was pinned in the vehicle + could not move, he was in a great deal of pain. The A.C.U./B.P. cursed him repeatedly, then with their gun-butts broke out front/back passenger side windows + reached in Plaintiff's wreaked vehicle + pulled him out by his hair and neck. The whole time Plaintiff screamed in pain. Plaintiff also exhibited facial cuts (which would of been blatantly obvious to a layman noless a trained specialty unit). Plaintiff was then tossed into a white (dog kennel like van) hand-cuffed tightly and driven over (what appeared to be) the bumpiest roads in Queens at a high rate of speed, causing the Plaintiff to be thrown around the back of the van, to Queens General Hospital. (Plaintiff however, can not identify which named party did what, without facial Id.)

# FIRST CAUSE OF ACTION CONCLUDED

6.) The A, C, U, / B, P, lacked any + all reasonable degree of professional judgment and abused + misused its power of Authority and its utilization of force, in it's pursuit of the Plaintiff when they ran Plaintiff's car into heavy traffic causing him to loose control of his vehicle totaling his car and 2using a multitude of serious life threatening injuries.

7.) Plaintiff contends that, he should not of been moved, noless pulled from the wreakage of his vehicle by his hair + the gruff of his neck. Plaintiff was blatantly, seriously injured, his car was not on fire or in any dangerous state for him to be removed in such a manner.

8.) Moreover, Plaintiff maintains that, by not even trying to speak with him or question his mental alertness or ascertain his bodily injuries, simply boggles the mind. By fact of, not calling in for an ambulance or some type of emergency service unit, displays both not only, a sheer lack of moral turpitude but a genuine show of no compassion, civility or professionalism. Notwithstanding gross arrogance devoid of any basic logical principles in the application of any + all procedural actions to be administered to the Plaintiff pursuant to NYCPD procedures, policy and guidelines. (Plaintiff would need to view Photo's of the named parties in order to ascertain which named party was responsible for their actions. Also, Plaintiff believes more parties took part.)

# SECOND CAUSE OF ACTION
## QUEENS GENERAL HOSPITAL

9.) Plaintiff was subsequently admitted to Queens General Hospital, on 6-12-10, directly resulting from his injuries obtained from his car colision. Plaintiff, was basically immobilized for the two (2) full days he was there, leaving his room only for tests/Xrays either on a hospital bed (gurney) or wheelchair.

10.) Plaintiff proffers that an 'Order' that, placed him on either bed-rest/bedridden', not to be moved, should have been issued by the Attending Physician or the head Nurse attending to Plaintiff. Instead on 6-15-10 two (2) Police Officers of the 105 precinct appeared to take Plaintiff/Patient to Court to be arraigned. The Plaintiff told the Officers that any small movement was hard enough and to get-up out of bed and get dressed & walk to a police van in the parking lot was impossible! The police Officer walked out of the room to speak with the Doctor, who had some form of dispute with him. However, he would not come in and explain (the Doctor) anything to the Plaintiff. A nurse who (by chance) walked into the room as the Police Officer returned stated only 'he needs a wheelchair he shouldnt walk'. She then went to get one. Plaintiff inthe interim was ordered to get dressed was pulled-up by one John Doe Officer, while the other kicked Plaintiff shoes over to him on the floor, struggled to put his pants

SECOND CAUSE OF ACTION CONCLUDED

QUEEN GEN. HOSP. / QUEENS CENTRAL BOOKING

on then proceeded to put his shoes on when he fell to the floor being caught at the last second by the nurse (bringing the wheel in the room). Plaintiff was promptly hand-cuffed and assisted to the wheelchair by the nuse who pushed the wheelchair as one John Doe police Officer held some paper work. Plaintiff should not have been released, from Q.G.H.

11) Plaintiff however, was advised that their transportation van lack any wheelchair accessibility. Plaintiff was told that he'd had to stand on his feet and walk when he got to Kew Gardens (Queens) Central booking to be processed. When Plaintiff asked how he would do this? The Officer replied "One step at a time". Plaintiff suffered in continuous severe pain and complained of it offten to both John Doe Officers and any and all processing Officers he came in contact with. Plaintiff did not know the extent/severity of his injuries at any time thereafter leaving Queens General Hospital.

12) After the booking process was completed the Plaintiff was directed to a pen (Holding area) and laid on the dirty floor waiting to be Arraigned. (Plaintiff over heard processing Officers say that the Judge would not do a bed-side Arraignment). Plaintiff languished in the bull-pen before/after arraignment for some six to nine hours, before transport.

# FORTH CAUSE OF ACTION

Rikers Island — Warden/Supt.
Transportation Prison Guards — Processing Prison
Guards — Rikers Island Medical Department

18) On or around the 15th day of June '2010,
Plaintiff was transported to Rikers Island,
Plaintiff could barely stand on his own strenght
and needed to lean on some thing at all times and
force to walk grabbing onto any thing to assist
and keep himself from falling over. Plaintiff had
an extremely differcult time answering questions
(as he did in Queens Gen. Hosp. Central booking &
Court). Plaintiff was laboring to breathe and
his pain was at pass out levels. It was extremely
Obvious to the Plaintiff that, nobody seemed to
care or would assist him. Everyone just wanted
to do their job and nothing more.

19) Plaintiff was in (waiting pens) for two to
three days, resigning himself that, this was the
end of his life. Plaintiff actually balled-up on
the floor & wished it would just be quick and
over with. Plaintiff did not eat or sleep and
could not understand why/how come he was being
treated in such a manner. Plaintiff could'nt
even exhibit the strenght to cry if he wanted
too. As such, Plaintiff just laid there in pain.

# FORTH CAUSE OF ACTION

20) After Plaintiff move from pen to pen a total of (3) times he was seen and witnessed by not only Arrestees but Prison Guards as well. Who observed Plaintiff on the floor in a fetal position not moving or eating and more importantly labored breathing. At least two different Prison Guards laughed and said 'Yo, you need to leave them drugs alone' Plaintiff did'nt / could'nt even set the record straighten He just laid there moaning to see the Doctor or a Nurse. Processing P.G's did nothing for Plaintiff

21) Plaintiff was warned at one point to "stop asking to see a Doctor, other wise his wait would be even longer." Plaintiff laid in pain hoping to either die or be given some help.

22) Plaintiff finally, was told to get up and go with the next group to Medical, as promised he was in the last group of Arrestees who either came in with him or shortly there after. There is an obvious preferential treatment for those who were there before, knew the Prison Guards, from the same (hood) neighborhood, etc.

23.) When Plaintiff was finally called in to see the Nurse (he requested Methadone for his pain + to get in to see the Nurse quicker). However, Plaintiff never got the chance to get it due to him

# FORTH CAUSE OF ACTION

Colapsing in the Doctor/Nurses office, half on the examination table + half off. They however treated Plaintiff like he was faking some thing at first, stating "your gonna get the methadone" Then Plaintiffs vital signs and heart-beat reveal something more serious necessitating an EKG which again revealed something, when Plaintiff passed-out again for the second time, when Plaintiff came around he told them he was in a serious car collision and could not remember all the details, how he receive facial cuts, bruises, etc. Plaintiff started to wheeze and he believes went-out a third time.

24) When Plaintiff came-to this time, EMS was strapping him to a gurney and taking him to East Elm Hurst Hospital in an ambulance. Plaintiff remembered only that they (E.M.S. parametics) ask him a few questions, taken off his oxygen mask to answer. Plaintiff was asked about his heart, etc. Plaintiff made clear he suffered a grueling car crash where the car (Truck) struck him, which way he hit, etc, etc, etc. Also was he knocked unconscious, etc. Plaintiff also advised them (EMS) that, he suffered from Hepatitis 'C' and was a 'bleeder'. That was valuable information for them as they made additional provisions.
        Plaintiff was informed that he was ~~~~ enroute to East Elm Hurst Hosp. emergency.

# SUMMARY OF CLAIM FACTS

25) N.Y.C.P.D. (Queens County 105 Precinct Command was named due to the Anti Crime Unit/Boarder Patrol as apprised to Plaintiff, was a 'free lance unit' that operated out of other precincts in other Boro's, at least thats what Plaintiff was advised. Hence the Boro's Commander being named, he's part of the Policy-makers.

26) Plaintiff names ███████, Officers which number more then (5). Plaintiff names only the ones he had either direct contact with, (3) grabbed Plaintiff and pulled him from his 'wreaked car' by his hair/neck. (2) ███████ Officers who assisted hand-cuffing Plaintiff and 'tossing' him in the back of the (Dog █Kennel like van) and drove furiously over bumpy roads of Queens. (Plaintiff will seek/request both a picture of the inside of the van & the precise route they took). All (5) were part of the pursuit and central arrest of the Plaintiff. The (its believed) Commander, of the Unit a 'Sergeant', who drove the Toyota Camery in such unspeakable terms, initiated and perpetuated the culmination of the events. This ███████ Officers is believed to have the ID # 906713.

27) Plaintiff also named both ███████, Officers who came to retrieve him from Queens General Hospital in such a slip-shod an unprofessional manner, practically yanking him from his hospital bed. These named Officer(s) represented the 105th Pct. Command/Queens Co.

# SUMMARY OF CLAIM FACTS

28.) <u>Queens General Hospital</u> exhibited nothing short of Deliberate Indifference, when they <u>not only</u> pre-released the Plaintiff, but obviously entered into a covert agreement with Police Officer(s) representing the (105th Pct. Command). When they (Queens Gen. Hosp., hereinafter Q.G.H.) more specifically, Plaintiffs Attending Physician when he/she argued in the hallway (debated loudly) that, of the Plaintiff's injuries. Plaintiff has gleaned over time that, not only were test(s) inconclusive but moreso not completed by the Hospital.

29.) The Nurse(s) who numbered at least three per-shift (and monitored Plaintiff daily) either left the immediate area and one helped Plaintiff to be removed knowing his condition. Neither Plaintiff's Doctor or Nurse(s) consulted with him befor releasing him to Police.

30.) The Attending Physician had the power and authority to keep Plaintiff in Q.G.H. for or until such test(s) were completed and failed miserably in not only his hippocratic Oath as a licensed Doctor but also helped divest the Plaintiff of his 'Patients Bill of Right's. This is not merely a misdiagnoses or a questionable treatment plan, which undoubtedly be covered under either malpractice or negligence. No this was a premeditated agreement between Police and the Hospital. This is why the Chief Administrater the Nurse(s) Administrater + the head-floor Nurse are all named parties to this action, also their the Policy-makers.

# SUMMARY OF CLAIM FACTS

31) When Plaintiff was released by the (Q.G.H.) and was taken to the Queens Co. Central Booking to be Processed the first Processing Officer stated (on seeing Plaintiff's condition 'boy you looked Fu__ed-up' This is one of two Processing Officers that, came in-to direct contact with Plaintiff either for Picture(s) (Mug-shot) or finger prints, paper work etc.

32) Plaintiff continually requested to see a Doctor and apprised any one and every one he came in contact with that he was in severe pain and please! wanted to see a Doctor. The retorts by the Processing Officers were either sarcastic or completely disingenuous. "You just left the hospital, apparently they felt you were good to go"! and "Don't worry the Judge will get you a Doctor." Then cracked-up laughing. Cruel things to say to someone/any one at your mercy even crueler yet, to be treated in such a manner, esp. in light of the fact that, Plaintiff would not be treated.

33)



# SUMMARY OF CLAIM FACTS

34) ~~During Plaintiffs transport to Rikers Island he continiously appprised the two transportation prison Gaurds that, he was in direr need of medical attention and needed to please see a Doctor. He during the Prison Gaurd who was driving He rejected verbally, from time to time as the other Prison Gaurd did in regardless of the talking. Plaintiff was basically told in regardless of his condition he would have to wait till processing was completed. Also to make the processing as quick as he could in order to see a doctor. But everybody is seen by medical regardless.~~

35.) Plaintiff was now becoming sick couldnt breathe well etc.(Just like anyone else Plaintiff knows his body and knew something was amiss, though he's not no medical expert there were just too many things that didnt feel right.

36.) The Processing Prison Gaurds although plaintiff came in contact with more then two, named the ones he had most contact with and denied him any type of medical treatment telling him "Yo your not special when everyone goes up to Medical in your group you'll see Medical ... but that will be at least two/three days before processing is complete, the more you ask the longer it will take".

37) Plaintiff did not fare any better at medical where he was initially rebuffed for any medical examination etc. He was told just that he would receive Methadone that, will ease his pain. Both the Doctor finally, + the Nurse gave Plaintiff an EKG (only after he fell-out).

# SUMMARY OF CLAIM FACTS CONCLUDED

37) The Nurse at Rikers Island Medical told the Doctor that Plaintiffs' vitals were of some concern and that could most likely be withdrawal ~~could be~~ symptoms from drugs. Plaintiff for the record was not on any form of illicit drugs which could/should be verified by Q.G.H. blood/urine samples.

38) Plaintiff proffers that, Rikers Island's Medical Depts. lack of a comprehensive & cogent Policy on how to deal with arrestees forced Plaintiff to languish in pens for almost three days, before he was even brought to Medical. This is not only a dangerous policy, its completely uncivilized and dehumanizing. The Medical Administrator is therefore just as responsible as the Doctors & Nurses are by mantaining and inforcing a policy that, is totally contradictory to contemporary standards of medical care/treatment. Such Administrator is responsible for Training Said Professionals.

39) The Warden/Superintendant of the building that, processed the Plaintiff, is thereby responsible for the policies, procedures and governing guidelines as utilized by his work-force/understaff. Because Said Warden/Supt. is one of the Chief policy makers, he holds the top position of such policy, doctrine, inforcment.



# INJURIES/MEDICAL TREATMENT

A.) Plaintiff received three, fractured ribbs on the left side of his body (his car was hit on the drivers-side door) he additionally suffered a collapsed (left) lung a ruptured spleen, serious internal bleeding/infection, a slight concussion, neck and back (lower) injuries, and a small amount facial cuts + bruises.

B.) Plaintiff is a documented (Medically) bleeder, and is disabled under Federal Laws/statutes according, and in compliance with The American Disabilities Act, (A.D.A.). Plaintiff is afflicted with Hepatitis 'C' which he advised to all medical personnel he came in contact with. From Queens General Hospital Doctor(s), Nurse(s), and assorted Medical Personnel to his Attorney, who (allegedly informed the Court). This also includes but is not limited to Rikers Island Medical Dept., etc.

C.) Plaintiff was taken to East Elm-Hurst Hosp., where he was cut in two spots under his left arm pit and two (2) Separate tubes were feeded down into his ribb cage to suck blood + infection out through the tubes. (It is noteworthy to point out that, Plaintiff was not put-out 'to sleep' — and was not under any heavy pain medication due to the fact that, to long of a waiting period had elapsed and creating a serious and sensitive procedure. Plaintiff had to be awake to weather the extreme pain). Such delay had created additional problems. Plaintiff was sent immediately to Bellevue Hosp. right from the Trauma Center of E.E.H.

# INJURIES / MEDICAL TREATMENT

D.) Plaintiff was received at Bellevue Hospital immediately thereafter, his release from East Elm Hurst Hospital trauma center, on or around the 17th or 18th of June '2010. Plaintiff was sent to East Elm Hurst Hosp. (who performed the life saving procedure) for one day, before his transfer to Bellevue Hospital.

E) Once at Bellevue Hospital, Plaintiff's condition seemed/appeared more serious then first diagnosed. Due to bleeding and other internal compromises, Plaintiff was placed in a 'medically induced coma' and experienced heart computations/erratic heart-beat while under/in said coma.

F.) Plaintiff was taken back to surgery approx. one month later and another tube was placed inside him. Plaintiff believes that was done upon emerging from his Medically induced coma, which he believes was approximately (30) days. Plaintiff's total stay at Bellevue Hosp. was/is believed to be (44) Days.

G.) Plaintiff as well as experts I'm sure will all agree that, Plaintiff should of not been released from Queen General Hosp. in the first place, noless Processed/Booked by the 105 Pct./central booking Arraigned by Queens Supreme Court and immediately thereafter, transported to Rikers Island for Processing and laying on the floor + moving from pen to pen for (3) days

# INJURIES / MEDICAL TREATMENT

## INJURY RESULTS

1) Plaintiff suffers to date, Severe Spleen abnormalities which creat hematologic problems and delayed recovery periods. This is a major factor and is linked to Plaintiff accident where Plaintiff was hit on the drivers side door and the truck that Plowed into Plaintiff's left-side, bruising/rupturing his Spleen, creating and further enlarging it. Plaintiff had pre-existing Hepatitis 'C' which was indubitable, greatly, compromised by these injuries + period of treatment finally given.

2) Plaintiff continuously receives severe pains on his left side at the top of his spleen/rib cage. Such pain is intensive to the point of keeping Plaintiff awake at nights. (As a result Plaintiff receives Pain medication to date). He still suffers continuous throbbing pains.

3) Plaintiff also continuously suffers lower back and neck pain, as a result, can not work, has extreme trouble ascending/decending stairs and walking for any marginal period of time. Can not lift any weight over 25 pounds also has trouble breathing esp. his left (side) lung. Pain so intense that it awakes him from his sleep. (Plaintiff is presently on pain medication.)

4) Plaintiff has three scars on his left side approx. one half inch in diameter. Plaintiff also has at least two smaller scars on his face on the left side above the cheek bone/eye. Plaintiff also suffers acute throbbing headaches and light sensitivity. Left ear continuously rings loudly.

# RELIEF BY THE COURT

\* A) Plaintiff respectfully asks the Court to Order the release of any + all Medical records from 6-12-10 to 6-15-10 from Queens Gen. Hosp.

\* B) Plaintiff also respectfully requests that all police arresting information also be released. this includes but is not limited to Queens Co. Central Booking / Processing. Any and all Queens Co. Supreme Court records / information. Attorney of record information, District Attorney files / records. Rikers Island Processing information + records as well as Rikers Island's Medical Department records. East Elm Hurst Hosp. (although their not named Defendant's). As well as Bellvue Hospital, (also not named Defendant's).

\* c) Additionally, Plaintiff seeks any + all NYCPD arresting procedures / Policy / guidelines and protocol, documents, Dealing with arrests of this nature.

D) Plaintiff respectfully asks the Court to review such policies and administer new or improved guidelines, procedures, policy and protocol for: NYCPD i.e., 105 Pct. Command / Queens Gen. Hosp. policy, guidlines and Procedures + how it relates to Arrestees, Queens Co. Booking / Processing. Queen Co. Supreme Ct. / D.A.'s Office. Rikers Island; processing / Medical Dept.

cont.

# REQUESTED RELIEF BY THE COURT

E.) Plaintiff also seeks Compensatory Damages in the amount of $250,000 (Two Hundred + Fifty Thousand Dollars).

F.) Plaintiff also seeks One Million Dollars a day for every day he was forced to suffer before finally being treated. Total amount requested $5,000,000 (Five Million Dollars)

G.) Complete total of Five Million Dollars plus Two Hundred Fifty Thousand [$5,250,000 for future pain/suffering scars and additional Disabilities.





Plaintiff is fully cognizant that, Relief requested A – C will undoubtedly be released at discovery stage.



G. GIANNATTASIO
29 GOLD STREET
VALLEY STREAM,
NY 11580

UNITED STATES DIST. COURT
SOUTHERN DISTRICT OF NEW YORK

PRO-SE OFFICE
500 PEARL STREET (RM. 230)
NEW YORK, NY   10007

C/o HON. JUDGE VINCENT L. BRICCETTI